# EXHIBIT 2

JUDGE CAPRONN

# 22 CV 03822

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**



U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**

MAY **2 0** 2022

AT_____ O'CLOCK_____
John M. Domurad, Clerk - Albany

**COMMODITY FUTURES TRADING
COMMISSION,**

Plaintiff,

v.

Case No.: 22-cv-3822

**EDDY ALEXANDRE and
EMINIFX, INC.**

Defendants.

## [PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR AN EX PARTE STATUTORY RESTRAINING ORDER, APPOINTMENT OF A TEMPORARY RECEIVER, AND OTHER EQUITABLE RELIEF

Plaintiff, the Commodity Futures Trading Commission ("Commission"), has filed a

Complaint for Permanent Injunction and Other Relief and moved, pursuant to Section 6c(a) of

the Commodity Exchange Act ("Act"), 7 U.S.C. § 13a-1(a), and in accordance with Rule 65 of

the Federal Rules of Civil Procedure ("Rule 65"), for an ex parte statutory restraining order

freezing assets, allowing inspection of records, and appointing a Temporary Receiver. The Court

has considered the pleadings, declarations, exhibits, and memorandum filed in support of the

Commission's motion, and finds that:

1.      This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question

jurisdiction) and 28 U.S.C. § 1345 (district courts have original jurisdiction over civil

actions commenced by the United States or by any agency expressly authorized to sue by

Act of Congress). 7 U.S.C. § 13a-1(a) authorizes the Commission to seek injunctive

relief against any person whenever it shall appear that such person has engaged, is

engaging, or is about to engage in any act or practice that violates any provision of the Act or any rule, regulation, or order promulgated thereunder.

2. Venue lies properly within this District pursuant to 7 U.S.C. § 13a-1(e).

3. The Commission has made a proper prima facie showing that since September 2021, Eddy Alexandre and EminiFX Inc. ("EminiFX") have made material misrepresentations and omissions regarding what participant funds would be used for and expected returns on investment, and have also misappropriated participant funds to themselves.

4. Therefore, there is good cause to believe that Defendants have engaged in, are engaging in or are about to engage in solicitation fraud and fraud by misappropriation, in violation of Sections 4b(a)(1)-(2) of the Act, 7 U.S.C. § 6b(a)(1)-(2), and Regulation 5.2(b), 17 C.F.R. § 5.2(b), fraud by a commodity pool operator ("CPO"), and the Associated Person ("AP") of a CPO, in violation of Section 4o(1)(A) and (B), 7 U.S.C. § 6o(1)(A), (B); the employment, or attempted employment, of manipulative or deceptive devices and contrivances, in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3) (2021).

5. There is also good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for customers in the form of monetary or other redress will occur from the withdrawal, transfer, removal, dissipation or other disposition of funds, assets or other property ("assets"), and/or the destruction, alteration or disposition of books and records and other documents ("records") by Defendants unless Defendants are immediately restrained and enjoined by Order of the Court.

6. Therefore, there is good cause for the Court to freeze assets owned, controlled, managed or held by Defendants or in which they have any beneficial interest.

2

7.     There is also good cause for the Court to prohibit Defendants from destroying, altering or
       disposing of records, and/or denying representatives of the Commission access to inspect
       records, when and as requested, to ensure that Commission representatives have
       immediate and complete access to those records.

8.     There is also good cause for the appointment of a Temporary Receiver to take control of
       all assets owned, controlled, managed, or held by Defendants, or in which they have any
       beneficial interest ("Defendants' Assets") so that the Temporary Receiver may preserve
       assets, investigate and determine customer claims, determine unlawful proceeds retained
       by Defendants and amounts due to customers as a result of Defendants' alleged
       violations, and distribute remaining funds under the Court's supervision.

9.     There is also good cause to require an accounting by Defendants to the Temporary
       Receiver to determine the location and disposition of customer funds.

10.    There is also good cause to order repatriation of assets controlled by Defendants so that
       such assets can be controlled by the Temporary Receiver and to assure payment of
       restitution and disgorgement as authorized by the Court.

11.    In summary, this is a proper case for granting a restraining order ex parte freezing assets,
       allowing inspection of records and appointing a temporary receiver because the
       Commission is likely to succeed on the merits. Moreover, there is also a reasonable
       likelihood that Defendants will transfer or dissipate assets or destroy or alter records.
       Therefore, the Court orders the following.

## DEFINITIONS

For the purposes of this Order, the following definitions apply:

3

12.     The term "assets" encompasses any legal or equitable interest in, right to, or claim to, any

real or personal property, whether individually or jointly, directly or indirectly controlled,

and wherever located, including but not limited to: chattels, goods, instruments,

equipment, fixtures, general intangibles, effects, leaseholds mail or other deliveries,

inventory, checks, notes, accounts (including, but not limited to, bank accounts and

accounts at other financial institutions), credits, receivables, lines of credit, contracts

(including spot, futures, options, swaps contracts, or foreign exchange contracts),

cryptocurrencies, insurance policies, and all funds, wherever located, whether in the

United States or outside the United States.

13.     The term "records" encompasses "documents" and "electronically stored information" as

those terms are used in Fed. R. Civ. P. 34(a), and includes, but is not limited to, all

writings, drawings, graphs, charts, photographs, sound recordings, images, and other data

or other data compilations—stored in any medium from which information can be

obtained or translated, if necessary, into reasonable usable form. The term "records" also

includes all electronic communications and data, and includes, but is not limited to, all

emails, online chats, online messaging, or electronic communications of any kind. The

term "records" also refers to each and every such item in Defendants' actual or

constructive possession, including but not limited to: (i) all such items within the custody

or control of any agents, employers, employees, or partners of the Defendants; and (ii) all

items which Defendants have a legal or equitable right to obtain from another person. A

draft or non-identical copy is a separate item within the meaning of the term. A record

also includes the file and folder tabs associated with each original and copy.

14.     "Defendants" means and refers to Eddy Alexandre and EminiFX, Inc.

4

RELIEF GRANTED

IT IS HEREBY ORDERED THAT:

I.   **Asset Freeze Order Prohibiting the Withdrawal, Transfer, Removal, Dissipation, and Disposal of Assets**

15.   Defendants are immediately restrained and enjoined, except as otherwise ordered by this Court, from directly or indirectly withdrawing, transferring, removing, dissipating or otherwise disposing of any assets, wherever located, including Defendants' assets held outside the United States, except as provided otherwise in Sections IV, V, and VI of this Order, or as otherwise ordered by the Court;

16.   Notwithstanding the provisions of this Section I, at the request of the Temporary Receiver, Defendants and any other person who has possession, custody, or control of any of Defendants' funds, assets, or other property shall transfer possession of all assets subject to this Order to the Temporary Receiver in accordance with Section IV, V, and VI of this Order.

17.   The assets affected by this Order shall include existing assets and assets acquired after the effective date of this Order.

II.   **Maintenance of and Access to All Records Relating to the Business Activities and Business and Personal Finances**

18.   Defendants are restrained from directly or indirectly destroying, altering, or disposing of, in any manner any records that relate or refer to the business activities or business or personal finances of any Defendants.

19.   Representatives of the Commission shall be immediately allowed to inspect any records that, in part or in whole, contain, relate, or refer to the business activities or business or personal finances of the Defendants, including, but not limited to, both hard-copy documents and electronically stored information, wherever they may be situated and

whether they are in the possession of the Defendants or others. To ensure preservation and facilitate meaningful inspection and review of these records, Defendants shall allow representatives of the Commission to make copies of these records, including complete forensic images of any devices containing any such records, and if on-site copying of these records and/or forensic imaging of these devices is not practicable, representatives may make such copies and/or forensic images off-site. After any such off-site copying and/or forensic imaging, Plaintiff shall promptly return the original documents and devices upon which electronic information is stored.

20.     To further facilitate meaningful inspection and review, Defendants shall, absent a valid assertion of their rights against self-incrimination under the Fifth Amendment, promptly provide Commission staff with:

    a.     the location of all records relating or referring to the business activities and business and personal finances of the Defendants;

    b.     all identification numbers, account names, passwords, or any other log-in credential in any form and other identifying information for websites, cloud storage services, email and smartphone accounts, online chat and messaging services, and all accounts at any bank, financial institution, or brokerage firm (including any introducing broker or futures commission merchant) owned, controlled or operated by Defendants, or to which the Defendants have access; and

    c.     all account names and passwords to, and the location, make and model of, all computers and/or mobile electronic devices owned and/or used by Defendants in connection with their business activities and business and personal finances.

6

25.     When inspecting and reviewing records and/or contents of forensic images that are

subject to this Order, including those contained on computers and/or other devices, the

Commission should undertake reasonable measures to prevent review of the Defendants'

privileged communications and/or other nonbusiness, nonfinancial materials by the

Commission's attorneys and other staff who are part of the litigation team in this matter.

Moreover, Defendants (or their counsel) shall promptly contact Plaintiff's counsel to

assert any claims of privilege relating to the inspection and review of any records or

contents of forensic images that are subject to this Order and promptly cooperate with

Plaintiff's counsel to develop reasonable protocols to isolate and prevent disclosure of

claimed privileged and/or other nonbusiness, nonfinancial materials to the Commission's

attorneys and other staff who are part of the litigation team in this matter. However,

nothing herein shall excuse Defendants from full and immediate compliance with this

Court's Order permitting Plaintiff to inspect and review the records and contents of

forensic images which relate to Defendants' business activities and their business and

personal finances.

III.    **Notice to Financial Institutions and Others that Hold or Control Assets or Records**

26.     To ensure the effectiveness of the asset freeze and pending further Order of this Court,

any financial or brokerage institution, business entity, or person that receives actual

notice of this Order and holds, controls, or maintains custody of any account or asset or

other property of Defendants shall not permit Defendants or other persons to withdraw,

transfer, remove, dissipate, or otherwise dispose of any of Defendants' assets, except as

directed by further order of the Court.

27.     Any financial or brokerage institution, business entity, or person that receives notice of

this Order by personal service or otherwise shall not directly or indirectly destroy, alter,

7

or dispose of, in any manner, any records relating to the business activities and business and personal finances of any Defendant.

28. Furthermore, any such financial or brokerage institution, business entity, or person that receives actual notice of this Order and holds, controls, or maintains custody of any account or asset titled in the name of, held for the benefit of, or otherwise under the control of any Defendant, or has held, controlled, or maintained custody of any such account or asset of any Defendant at any time since September 20, 2021, shall not deny a request by the Commission to inspect all records pertaining to every account or asset owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs. As an alternative to allowing inspection of records, a financial or brokerage institution, business entity or other person may provide copies of records requested by the Commission.

29. Furthermore, any such financial or brokerage institution, business entity, or person that receives actual notice of this Order shall:

   a. Within ten business days of a request by the Temporary Receiver, or such longer period specified by the Temporary Receiver, provide the Temporary Receiver with copies of all records pertaining to any account or asset owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants, either individually or jointly, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets,

8

transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; and

b.      Cooperate with all reasonable requests of the Temporary Receiver relating to implementation of this Order, including transferring Defendants' funds at the Temporary Receiver's direction, and producing records related to business activities or business or personal finances of Defendants' to the Temporary Receiver.

c.      Not take any action, in active concert or participation with Defendants, contrary to or inconsistent with this Order or to undermine the Temporary Receiver from carrying out any authorized act under this Order.

IV.      **Order Appointing Temporary Receiver**

30.      David A. Castleman is appointed Temporary Receiver, with the full powers of an equity receiver for Defendant EminiFX, Inc. and its affiliates and subsidiaries owned or controlled by Defendant EminFx,Inc. and all customer funds and property and other assets traceable to customers in the possession of or under the control of Eddy Alexandre (hereinafter referred to as the "Receivership Defendants"), and of all the funds, properties, premises, accounts, income, now or hereafter due or owing to the Receivership Defendants, and other assets directly or indirectly owned, beneficially or otherwise, by the Receivership Defendants (hereinafter, the "Receivership Estate"). The Temporary Receiver shall be the agent of this Court in acting as Temporary Receiver under this Order. The Temporary Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers, managing members, and general and limited partnerss of the Receivership Defendants under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in

9

addition to all powers and authority of a receiver at equity, and all powers conferred upon

a receiver by the provisions of 28 U.S.C. §§ 754, 959 & 1692, and Fed R. Civ. P. 66.

31.     The Temporary Receiver is authorized to accomplish the following:

   a.     Assume full control of the Receivership Defendants by removing Defendants

          Eddy Alexandre and EminiFX, Inc., and any officer, independent contractor,

          employee, or agent of the Receivership Defendants, from control and

          management of the affairs of the Receivership Defendants as the Temporary

          Receiver deems appropriate;

   b.     Take exclusive custody, control, and possession of the Receivership Estate, which

          includes but is not limited to complete authority to sue for, collect, receive, and

          take possession of all goods, chattels, furniture, office supplies and equipment,

          rights, credits, money, financial accounts of any kind (including but not limited to

          bank, checking, savings, brokerage, cryptocurrency or similar) effects, land,

          leases, books, records, work papers, and records of accounts, including

          electronically-stored information (including but not limited to all computers,

          laptops, hard drives, external storage drives, and any other such memory, media

          or electronic storage devices), contracts, financial records, funds on hand in banks

          and other financial institutions, certificates of deposit, stocks, bonds, debentures,

          mortgages, and other securities and investments, cryptocurrency stored in any

          form, and other papers and records of the Receivership Defendants and customers

          or clients of any of Receivership Defendants' business activities whose interests

          are now held by, or under the direction, possession, custody, or control of, the

          Receivership Defendants;

c.   Take all steps necessary to secure the business and other premises under the
control of the Receivership Defendants, including but not limited to premises
located at 31 W. 34th St., New York, NY;

d.   Perform all acts necessary, including the suspension of operations, to conserve,
hold, manage, and preserve the value of the Receivership Estate in order to
prevent an irreparable loss, damage, or injury to any customers or clients of any of
Receivership Defendants' business activities;

e.   Prevent the withdrawal or misapplication of assets entrusted to the Receivership
Defendants, and otherwise protect the interests of any customers or clients of any
of Receivership Defendants' business activities;

f.   Manage and administer the Receivership Defendants and the Receivership Estate
by performing all acts incidental thereto that the Temporary Receiver deems
appropriate, including hiring or dismissing any and all personnel, suspending
operations, and/or entering into agreements, including but not limited to: (1) the
retention and employment of investigators, attorneys or accountants, appraisers,
and other independent contractors and technical specialists of the Temporary
Receiver's choice, including without limitation members and employees of the
Temporary Receiver's firm, to assist, advise, and represent the Temporary
Receiver; and (2) the movement and storage of any equipment, furniture, records,
files or other physical property of the Receivership Defendants;

g.   Open all mail directed to or received by or at the offices or post office boxes of
the Receivership Entities, and to inspect all mail opened prior to the entry of this
Order, to determine whether items or information therein fall within the mandates

11

of this Order; and Instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of any of the Receivership Entities (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Entities.

h.     Collect all funds owed to the Receivership Defendants;

i.      Initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to, any actions or proceedings in state, federal, or foreign court that the Temporary Receiver deems necessary and advisable to preserve or increase the value of the Receivership Estate or that the Temporary Receiver deems necessary and advisable to carry out the Temporary Receiver's mandate under this Order;

j.      Issue subpoenas to obtain records and testimony pertaining to the Receivership and conduct discovery in this action on behalf of the Receivership Estate;

k.     File this Order and any necessary accompanying documents in any judicial district of the United States pursuant to 28 U.S.C. §§ 754 & 1692;

l.      Open one or more bank accounts and deposit all funds of the Receivership Estate in such designated accounts and make all payments and disbursements from the Receivership Estate from such accounts;

m.    Take all necessary steps to obtain any required tax identification numbers and to file tax returns and pay all tax liability for Defendant EminiFX, Inc; *provided that* the Receiver shall not be required to file tax returns for Defendant Eddy Alexandre;

n.     Make payments and disbursements from the Receivership Estate that are necessary or advisable for carrying out the directions of, or exercising the

12

authority granted by, this Order, provided that the Temporary Receiver shall

apply to the Court for prior approval of any payment of any debt or obligation

incurred by the Receivership Defendants prior to the date of entry of this Order,

except for payments that the Temporary Receiver deems necessary or advisable to

secure the Receivership Estate from immediate and irreparable loss;

o.    Create and maintain a website for communications with investors in EminiFX and

update the website as appropriate to provide information to investors to the

activities and condition of the Receivership Estate; and

p.    Maintain written accounts itemizing receipts and expenditures, describing

properties held or managed, and naming the depositories holding funds or other

assets of the Receivership Estate; make such written accounts and supporting

documentation available to the Commission for inspection; and, within sixty days

of being appointed and periodically thereafter, as directed by the Court, file with

the Court and serve on the parties a report summarizing efforts to marshal and

collect assets, administer the Receivership Estate, and otherwise perform the

duties mandated by this Order.

V.    **Accounting and Transfer of Funds and Records To The Temporary Receiver**

32.   Absent a valid assertion by Defendants of their respective rights against self-

incrimination under the Fifth Amendment, each Defendant shall, within five business

days following the service of this Order:

a.    Provide the Temporary Receiver with a full detailed accounting of all assets,

including the assets inside and outside of the United States that are held by each

and every Defendant, for their benefit, or under their direct or indirect control,

whether jointly or singly, and the location of all records of the Receivership
Estate.

b.      Transfer to the territory of the United States and deliver to possession, custody,
and control of the Temporary Receiver, all records and assets (other than real
property) located outside of the United States that are held by each and every
Defendants, for their benefit, or under their direct or indirect control, whether
jointly or singly.

c.      Provide the Temporary Receiver access to all records of accounts or assets of the
Defendants held by financial or brokerage institutions located within or outside
the territorial United States by signing any necessary consent forms.

33.     Absent a valid assertion by Defendants of their rights against self-incrimination under the
Fifth Amendment, Defendants shall, within twenty-four hours of the issuance of this
Order, cause to be prepared and delivered to the Temporary Receiver, a detailed and
complete schedule of all passwords and identification (ID) numbers for all websites,
cloud storage services, email and smartphone accounts, online chat and messaging
services, and all accounts at any bank, financial institution, or brokerage firm (including
any introducing broker or futures commission merchant) controlled or operated by or to
which any of the Defendants have access in connection with their business activities and
business and personal finances.

34.     Absent a valid assertion by Defendants of their rights against self-incrimination under the
Fifth Amendment, Defendants shall, within twenty-four hours of the issuance of this
Order, cause to be prepared and delivered to the Temporary Receiver, a detailed and
complete schedule of all passwords to, and the location, make and model of, all

14

computers and mobile electronic devices owned and/or used by Defendants in connection
with their business activities and business and personal finances. The schedules required
by this section shall include at a minimum the make, model and description of each,
along with the location, the name of the person primarily assigned to use the computer
and/or mobile device, and all passwords necessary to access and use the software
contained on the computer and/or mobile device.

VI.   **Turning Over Assets and Records to the Temporary Receiver**

35.   Upon service of this Order, and absent a valid assertion by Defendants of their rights
against self-incrimination under the Fifth Amendment, Defendants and any other person
or entity served with a copy of this Order, shall immediately or within such time as
permitted by the Temporary Receiver in writing, deliver over to the Temporary Receiver:

   a.   Possession and custody of all assets of the Receivership Defendants, wherever
        situated, including those owned beneficially or otherwise;

   b.   Possession and custody of records of the Receivership Defendants in connection
        with their business activities and business and personal finances, including but not
        limited to, all records of accounts, all financial and accounting records, balance
        sheets, income statements, bank records (including monthly statements, canceled
        checks, records of wire transfers, and check registers), client lists, title documents
        and other records of the Receivership Defendants;

   c.   Possession and custody of all assets belonging to members of the public now held
        by the Receivership Defendants;

   d.   All keys, passwords, entry codes, and combinations to locks necessary to gain or
        to secure access to any of the assets or records of the Receivership Defendants
        related to their business activities and business and personal finances, including,

15

but not limited to, access to the Receivership Defendants' business premises,

means of communication, accounts, computer systems, mobile electronic devices,

or other property; and

e.    Information identifying the accounts, employees, properties or other assets or

obligations of the Receivership Defendants.

## VII.    Directive To Cooperate with Temporary Receiver

36.    Absent a valid assertion of their rights against self-incrimination under the Fifth

Amendment, Defendants and all other persons or entities served with a copy of this order

shall cooperate fully with and assist the Temporary Receiver.  This cooperation and

assistance shall include, but not be limited to, providing any information to the

Temporary Receiver that the Temporary Receiver deems necessary to exercising the

authority as provided in this Order; providing any password required to access any

computer or electronic files in any medium; and discharging the responsibilities of the

Temporary Receiver under this Order, and advising all persons who owe debts to the

Receivership Defendants that all debts should be paid directly to the Temporary

Receiver.

## VIII.    Stay on Actions Against the Receivership Defendants
IT IS FURTHER ORDERED THAT:

37.    Except by leave of the Court, during the pendency of the receivership ordered herein, the

Defendants and all other persons and entities shall be and hereby are stayed from taking

any action (other than the present action by the Commission) to establish or enforce any

claim, right or interest for, against, on behalf of, in, or in the name of, the Receivership

Defendants, the Temporary Receiver, the Receivership Estate, or the Temporary

16

Receiver's duly authorized agents acting in their capacities as such, including but not limited to, the following actions:

a.  Petitioning, or assisting in the filing of a petition, that would cause the Receivership Defendants to be placed in bankruptcy;

b.  Commencing, prosecuting, litigating, or enforcing any suit or proceeding against any of the Receivership Defendants, or any of their subsidiaries or affiliates, except that such actions may be filed to toll any applicable statute of limitations;

c.  Commencing, prosecuting, continuing, or entering any suit or proceeding in the name or on behalf of any of the Receivership Defendants, or any of their subsidiaries or affiliates;

d.  Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of the Receivership Defendants, or any of their subsidiaries or affiliates, or any property claimed by any of them, or attempting to foreclose, forfeit, alter, or terminate any of the Receivership Defendants' interests in property, including without limitation, the establishment, granting, or perfection of any security interest, whether such acts are part of a judicial proceeding or otherwise;

e.  Using self-help or executing or issuing, or causing the execution or issuance of, any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any property, wherever located, owned by or in the possession of the Receivership Defendants, or any of their subsidiaries or

affiliates, or the Temporary Receiver, or any agent of the Temporary Receiver;
and

f.  Doing any act or thing whatsoever to interfere with the Temporary Receiver

taking control, possession, or management of the property subject to the

receivership, or to in any way interfere with the Temporary Receiver or to harass

or interfere with the duties of the Temporary Receiver; or to interfere in any

manner with the exclusive jurisdiction of this Court over the property and assets

of the Receivership Defendants, or their subsidiaries or affiliates.

Provided, however, that nothing in this section shall prohibit any federal or state law

enforcement or regulatory authority from commencing or prosecuting an action against

the Receivership Defendants. This Court shall retain jurisdiction over any action filed

against the Receiver or his retained professionals based upon acts or omissions

committed in their representative capacities.

IX.  **Compensation for Temporary Receiver and Personnel Hired by the Temporary
Receiver**

38.  The Temporary Receiver and all personnel hired by the Temporary Receiver as herein

authorized, including counsel to the Temporary Receiver, are entitled to reasonable

compensation for the performance of duties pursuant to this Order and for the cost of

actual out-of-pocket expenses incurred by them for those services authorized by this

Order that when rendered were: (1) reasonably likely to benefit the receivership estate; or

(2) necessary to the administration of the estate. However, the Temporary Receiver and

any personnel hired by the Temporary Receiver shall not be compensated or reimbursed

by, or otherwise be entitled to, any funds from the Court or the Commission. The

Temporary Receiver shall file with the Court and serve on the parties periodic requests

for the payment of such reasonable compensation, with the first such request filed no

more than 90 days after the date of this Order for fees and expenses incurred through

June 30, 2022; and subsequent requests filed quarterly thereafter. The requests for

compensation shall itemize the time and nature of services rendered by the Temporary

Receiver and all personnel hired by the Temporary Receiver. The Temporary Receiver

shall also comply with the Billing Instructions, attached hereto as Exhibit A.

**X.**   **Persons Bound By this Order**

39.   This Order is binding on any person who receives actual notice of this Order by personal

service or otherwise and is acting in the capacity of an officer, agent, servant, employee,

or attorney of the Defendants, or is in active concert or participation with the Defendants.

**XI.**   **Bond Not Required of Plaintiff or the Temporary Receiver**

40.   As Plaintiff Commission has made a proper showing under Section 6c(b) of the Act,

7 U.S.C. § 13a-1(b), it is not required to post any bond in connection with this Order.

The Temporary Receiver similarly is not required to post bond.

**XII.**   **Service of Order and Assistance of United States Marshals Service and/or Other
Law Enforcement Personnel**

41.   Copies of this Order may be served by any means, including via email or facsimile

transmission, upon any financial institution or other entity or person that may have

possession, custody, or control of any records or assets of any Defendant, or that may be

subject to any provision of this Order.

42.   Elizabeth Streit, Douglas Snodgrass, Matthew Edelstein, and Raymond Lavko and

representatives of the United States Marshals Service are specially appointed by the

Court to effect service.

19

43.    The United States Marshals Service, or state and local law enforcement in the applicable
       judicial district, is authorized to: a) accompany and assist the Commission
       representatives in the service and execution of the Summons, Complaint and this Order
       on the Defendants, and b) help maintain lawful order while Commission representatives
       inspect records as provided in this Order.

44.    Upon the request of the Receiver, the United States Marshal Service, in any judicial
       district, is hereby authorized to assist the Receiver in carrying out his duties to take
       possession, custody and control of, or identify the location of, any assets, records or other
       materials belonging to the Receivership Estate.

**XIII.  Service on the Commission**

44.    Defendants shall comply with all electronic filing rules and requirements of the U.S.
       District Court of the Southern District of New York and shall serve all pleadings,
       correspondence, notices required by this Order, and other materials on the Commission
       by delivering a copy to Douglas Snodgrass, Division of Enforcement, Commodity
       Futures Trading Commission, 77 West Jackson Blvd, Suite 800, Chicago, Illinois 60604,
       by electronic filing, e-mail, personal delivery or courier service (such as Federal Express
       or United Parcel Service) and not by regular mail due to potential delay resulting from
       heightened security and decontamination procedures applicable to the Commission's
       regular mail.

**XIV.  Further Proceedings**

45.    Plaintiff's Motion for a Preliminary Injunction is set for hearing on the [insert date] 24th day
       of May, 2022, at [insert time] 2:00 ρ .m., before the Honorable [insert judge's name], Valerie Caproni
       Courtroom [insert number] 443 at the United States Courthouse Thurgood Marshall for the Southern District of
       New York at [insert address, city, state] 40 Foley Square, New York, NY 10007. Should any party wish to file a memorandum of

law or other papers concerning the issuance of a preliminary injunction against the

Defendants, such materials shall be filed, served and received by all parties *and the court* at least two

days before the hearing ordered above. *Such papers must be filed on ECF.*

### XV.   Force and Effect

46.   This Order shall remain in full force and effect until ~~[insert date fourteen days after entry~~ *May 24, 2022*

of the order]~~ unless extended further by order of this Court pursuant to Rule 65(b)(2), and

this Court retains jurisdiction of this matter for all purposes.

IT SO ORDERED, at New York, NY on this ~~[insert date]~~ *11th* day of May, 2022, at ~~[insert~~ *10.55 am*

time]~~ __.m.

CERTIFIED AS A TRUE COPY ON

THIS DATE *05.18.2022*

BY _____

(   ) Clerk

( X ) Deputy *Nicole Molinelli*

_____
UNITED STATES DISTRICT JUDGE

*By no later than Friday, May 13, 2022,*
*Plaintiff must email Chambers a proposed*
*unsealing order. By no later than*
*Monday, May 16, 2022, Plaintiff must serve*
*the pleadings, this order, and all accompanying*
*filings on Defendants. Plaintiff must file proof*
*of such service on the docket by no later than*
*Tuesday, May 17, 2022.*

# EXHIBIT A



BILLING INSTRUCTIONS FOR RECEIVERS IN CIVIL ACTIONS
COMMENCED BY THE U.S. COMMODITY FUTURES TRADING COMMISSION

Except where inconsistent with guidelines established by the applicable district or circuit court, the undersigned hereby represents that, if appointed receiver in a civil action commenced by the U.S. Commodity Futures Trading Commission ("Commission"), each application for professional fees and expenses (the "Application") submitted by the receiver, including all contractors and/or professionals retained by the receiver, will comply with these billing instructions (the "Billing Instructions"). Undersigned further represents that any deviation from the Billing Instructions will be described in writing and submitted to the Commission at least 30 days prior to the filing of the Application with the Receivership Court. Following its receipt and review of proposed applications as described in section A.2 below, the Commission may object to deviations and charges with which it does not agree.

Undersigned acknowledges that all applications for compensation are interim and are subject to a cost benefit review and final review at the close of the receivership. At the close of the receivership, the receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the receiver during the course of the receivership.

Undersigned acknowledges that, to the extent requested by the Commission, interim fee applications may be subject to a holdback of 20% of the amount of fees and expenses for each application filed with the Court. The amounts held back during the course of the receivership will be paid out at the discretion of the court as part of the final fee application submitted at the close of the receivership.

Undersigned acknowledges that, all compensation will be paid from the receivership estate and under no circumstances will the Commission be liable for receivership fees and/or expenses.

I.   CERTIFICATION

A. Each Application must contain a Certification by the Applicant that:

   i.   The Certifying Professional has read the Application;
   ii.  To the best of the Applicant's knowledge, information and belief formed after reasonable inquiry, the Application and all fees and expenses therein are true and accurate and comply with the Billing Instructions (with any exceptions specifically noted in the Certification and described in the Application);
   iii. All fees contained in the Application are based on the rates listed in the Applicant's fee schedule attached hereto and such fees are

reasonable, necessary and commensurate with the skill and
experience required for the activity performed;

iv. The Applicant has not included in the amount for which reimbursement
is sought the amortization of the cost of any investment, equipment or
capital outlay (except to the extent that any such amortization is
included within the permitted allowable amounts set forth herein for
photocopies and facsimile transmission); and,

v. In seeking reimbursement for a service which the Applicant justifiably
purchased or contracted for from a third party (such as copying,
imaging, bulk mail, messenger service, overnight courier,
computerized research, or title and lien searches), the Applicant
requests reimbursement only for the amount billed to the Applicant by
the third-party vendor and paid by the Applicant to such vendor. If
such services are performed by the receiver, the receiver will certify
that it is not making a profit on such reimbursable service.

B. At least 30 days prior to the filing of the Application with the Court, the
Applicant will provide to CFTC counsel a complete copy of the proposed
Application, together with all exhibits and relevant billing information in a
format to be provided by CFTC staff.

II.   ATTENDANCE AT HEARING ON APPLICATION

The Receiver or other Certifying Professional shall be present at any hearing to
consider the Application.

III.   CONTENT OF APPLICATION

The following information must be provided in the Application:

A. Information about the Applicant and the Application.
i. The time period covered by the application;
ii. The date the receiver was appointed, the date of the order approving
the employment of the Applicant and the date services commenced;
iii. The names and hourly rates of all Applicant's professionals and
paraprofessionals (the "Fee Schedule"); and
iv. Whether the Application is interim or final, and the dates of previous
orders on interim Applications along with amounts requested and the
amounts allowed or disallowed, all amounts of previous payments, and
amount of any allowed Applications which remain unpaid.

B. Case Status (Narrative)
i. The amount of cash on hand, the amount and nature of accrued
administrative expenses, and the amount of unencumbered funds in
the estate;
ii. Summary of the administration of the case, including all funds received
and disbursed, and when the case is expected to close;
iii. Summary of creditor claims proceedings, if applicable, including a
description of established or anticipated procedures for: (i) providing
notice to known and unknown claimants; (ii) receipt and review of

claims; (iii) making recommendations to court for payment or denial of
claims; and (iv) final disposition of claims. This summary should also
include the status of such claims proceedings after they have been
commenced;

iv. Description of assets in the receivership estate, including approximate
or actual valuations, anticipated or proposed dispositions, and reasons
for retaining assets where no disposition is intended; and,

v. Description of liquidated and unliquidated claims held by the receiver,
including the need for forensic and/or investigatory resources;
approximate valuations of claims; and anticipated or proposed
methods of enforcing such claims (including likelihood of success in: (i)
reducing the claims to judgment; and (ii) collecting such judgments).

C. Current and Previous Billings

i. Total compensation and expenses requested and any amount(s)
previously requested;

ii. Total compensation and expenses previously awarded by the court;
and

iii. Total hours billed and total amount of billing for each person who billed
time during the period for which fees are requested.

D. Standardized Accounting Report

The CFTC's Standardized Accounting Report ("Report") submitted by the
Receiver for the most recent quarter shall be attached to any fee application
as an exhibit. A Report form is attached.

IV.   TIME RECORDS REQUIRED TO SUPPORT FEE APPLICATIONS

A. Each professional and paraprofessional must record time in increments of
tenths of an hour, and must keep contemporaneous time records on a daily
basis.

B. Time records must set forth in reasonable detail an appropriate narrative
description of the services rendered. Without limiting the foregoing, the
description should include indications of the participants in, as well as the
scope, identification and purpose of the activity that is reasonable in the
circumstances.

C. If applicable, the Application should separately describe each business
enterprise or litigation matter (i.e., Project) for which outside professionals
have been employed. For example, separate litigation matters should be set
out individually in the Application as individual Projects and each such Project
should contain Activity Categories as described in Sections IV.D and IV.E
below. Each Project Category should contain a narrative summary of the
following information:

i. A description of the project, its necessity and benefit to the estate and
the status of the project including pending litigation for which
compensation and/or reimbursement of expenses is requested;

ii. Identification of each person providing services on the project; and

      iii.  A statement of the number of hours spent and the amount of compensation requested by professionals and paraprofessionals on the project.

D.  In recording time, each professional and paraprofessional may, subject to Section IV.E below, describe in one entry the nature of the services rendered during that day and the aggregate time expended for that day in an Activity Category (as described below) without delineating the actual time spent on each discrete activity in an Activity Category, provided, however, single time entries of more than one hour in an Activity Category that include two or more activities must include a notation of the approximate time spent on each activity within the Activity Category.

E.  Time records shall be in chronological order by Activity Category. Only one category should be used for any given activity and professionals and paraprofessionals should make their best effort to be consistent in their use of categories. This applies both within and across firms. Thus, it may be appropriate for all professionals to discuss the categories in advance and agree generally on how activities will be categorized. Every effort should be made to use the listed categories in the first instance and to coordinate the use of additional categories with other professionals in the case. Notwithstanding the above, all categories must correspond with the Report. The time information reflected on the Application shall also be supplied to the CFTC counsel in an electronic format as directed by CFTC staff.

      i.  *Legal Activity Categories.* The following categories are generally more applicable to attorneys but may be used by all professionals where appropriate:

          1.  Asset Analysis and Recovery. Identification and review of potential assets including causes of action and non-litigation recoveries.

          2.  Asset Disposition. Sales, leases, abandonment and related transaction work. Where extended series of sales or other disposition of assets is contemplated, a separate category should be established for each major transaction.

          3.  Business Operations. Issues related to operation of an ongoing business.

          4.  Case Administration. Coordination and compliance activities, including preparation of reports to the court, investor inquiries, etc.

          5.  Claims Administration and Objections. Expenses in formulating, gaining approval of and administering any claims procedure.

      ii.  *Financial Activity Categories.* The following categories are generally more applicable to accountants and financial advisors, but may be used by all professionals where appropriate:

1. Accounting/Auditing.  Activities related to maintaining and auditing books of account, preparation of financial statements and account analysis.
2. Business Analysis.  Preparation and review of company business plan; development and review of strategies; preparation and review of cash flow forecasts and feasibility studies.
3. Corporate Finance.  If appropriate, review financial aspects of potential mergers, acquisitions and disposition of company or subsidiaries.
4. Data Analysis/Computer Forensics.
5. Status Reports.  Preparation and review of periodic reports as may be required by the court.
6. Litigation Consulting.  Providing consulting and expert witness services relating to forensic accounting, etc.
7. Forensic Accounting.  Reconstructing books and records from past transactions and bringing accounting current; tracing and sourcing assets.
8. Tax Issues.  Analysis of tax issues and preparation of state and federal tax returns.
9. Valuation.  Appraise or review appraisals of assets.

## V.    PAYMENT OF FEES AND EXPENSES

### A. Presentation of Fees and Expenses in Application

i. All fees and expenses must be necessary and reasonable; excessive charges will not be paid.  To the extent that an Applicant seeks reimbursement of expenses, the Application shall include a categorization of such expenses along with an exhibit summarizing the total expenses for the period covered by the Application.

ii. All charges for litigation must be reasonably likely to produce a net economic benefit to the estate.  With respect to each litigation matter, the Applicant shall certify that the Applicant determined that the action was likely to produce a net economic benefit to the estate, based on reviews of:

1. The legal theories upon which the action was based, including issues of standing;
2. The likelihood of collection on any judgment which might be obtained; and
3. Alternative methods of seeking the relief, such as the retention of counsel on a contingency basis. Retention of counsel on a contingency fee basis should be pursued where the Receiver (after consulting with Commission counsel) concludes that retention of counsel under the approved fee schedule would produce a lesser economic benefit to the receivership estate. The Receiver should memorialize these cost-benefit analyses,

through communications with the Receiver's counsel, as support for the engagement of such counsel.

    iii. Invoices and/or bills for each expense item for which reimbursement is sought must be kept for seven (7) years after the close of the receivership. Such support shall be provided on request to the court and the CFTC and, in appropriate circumstances, to any party in interest; provided that, where applicable, privilege or confidentiality can be preserved.

    iv. Time spent preparing fee applications, or any documentation in support thereof, may not be charged to the receivership estate.

B. Allowable and Non-Allowable Reimbursable Expenses

    i. *Filing Fees, Process Service Fees, Witness Fees and Expert Witness Fees.* Filing fees, process service fees, witness fees and expert witness fees (subject to court approval of the employment of any professionals and the reasonableness of such fees shall be allowable to the extent of the actual cost incurred by the Applicant.

    ii. *Court Reporter Fees and Transcripts.* Court reporter fees and copies of transcripts shall be allowable to the extent of the actual cost incurred by the Applicant.

    iii. *Lien and Title Searches.* The cost for lien and title searches (whether done in house or by an outside vendor is allowable to the extent of the actual cost incurred by, or invoiced to, the Applicant.

    iv. *Photocopying.* Photocopying shall be allowable at a cost not to exceed $.15 per page. The Applicant shall set forth in its fee application the total number of copies. Outside vendor photocopying charges are allowable at the actual cost invoiced to the Applicant. Necessary copies obtained from the Clerk of the Court (including certified copies) or from the court approved copy service will be permitted at the actual cost incurred by the Applicant. The Applicant shall not reflect on the Application any copies for which the Applicant has been, or expects to be, reimbursed (e.g. payment from the opposing party for document production from which the Applicant has been reimbursed).

    v. *Postage, Overnight Delivered Courier/Messenger Services.* The cost of postage, overnight delivery, and outside courier/messenger services are reimbursable for the actual cost incurred, if reasonably incurred. Charges should be minimized whenever possible. For example, couriers/messengers and overnight delivery service should only be used when first-class mail is impracticable.

    vi. *Telephone.* Long distance telephone charges are allowable to the Applicant for the actual cost invoiced from the telephone carrier. Charges for local telephone exchange service and cellular telephone service shall not be reimbursable.

vii. *Facsimile Transmission.* A charge for outgoing transmission to long distance telephone numbers are reimbursable at the lower of (1) toll charges or (b) if such amount is not readily determinable, $1.00 per page for domestic and $2.00 per page for international transmissions. Charges for in-coming facsimiles are not reimbursable. The Application shall state the total number of pages of the outgoing transmissions.

viii. *Computerized Legal Research.* Computerized legal research services such as Lexis and Westlaw are reimbursable to the extent of the invoiced cost from the vendor; however, if such service is provided on a monthly or other periodic rate, proportional usage shall not be reimbursable.

ix. *Parking.* Reimbursement for parking is allowable, including parking by a professional to attend court proceedings, depositions or case conferences, parking at the airport, and client and thirdparty parking.

x. *Travel Expenses and Meals.* Local travel time and related expenses for destinations within a twenty (20) mile radius of the Applicant's office including mileage, taxis, etc. and meals will NOT be reimbursed. Mileage charges for out-of-town travel (outside a twenty (20) mile radius of the Applicant's office) with one's own car are reimbursable at the lesser of the amount customarily charged clients or the amount allowed by the Internal Revenue Service for per mile deductions. For purposes of the foregoing, the Applicant's office shall be the office in which the person incurring the travel expense is located.

Long distance travel time outside a twenty (20) mile radius of the Applicant's office is reimbursable at 50% of the Applicant's regular billing rate. The reimbursement of long distance travel expenses is subject to the following limitations: 1) the Applicant shall seek and use the lowest airfare or train fare available to the Applicant; 2) luxury accommodations and deluxe meals are not reimbursable; 3) personal, incidental charges such as telephone and laundry are not reimbursable unless necessary as a result of a reasonably unforeseen extended stay not due to the fault of the traveler; and 4) each out-of-pocket travel and allowable miscellaneous administrative expense requires a receipt that is to be attached to the invoice.

xi. *Word Processing, Document Preparation, Data Processing, Proofreading, Secretarial and Other Staff Services.* Secretarial, library, word processing, document preparation (other than by professionals or paraprofessionals), data processing and other staff services (exclusive of paraprofessional services), including overtime for the foregoing, are NOT reimbursable. Charges for proofreading for typographical or similar errors are NOT reimbursable whether the services are performed by a paralegal, secretary or temporary staff.

investors. In addition, any necessary basic communications with investors should be handled by clerical or paralegal staff (or comparatively paid staff) to the extent possible. Expenses stemming from a failure to comply with this policy will NOT be submitted.

Candidate for Appointment as Receiver
in Civil Action Commenced by the U.S.
Commodity Futures Trading Commission

Date: May 11, 2022

David A. Castleman
Raines Feldman LLP
One Rockefeller Plaza, 10th Floor
New York, NY 10020
dcastleman@raineslaw.com
T 310-440-4100
F 310-697-1367

Standardized Accounting Report Form

| | | Detail | Subtotal | Grand Total | Notes |
|---|---|---|---|---|---|
| | STANDARDIZED ACCOUNTING REPORT FOR [insert name of estate] Receivership | | | | |
| | Civil Court Docket No. [insert] | | | | |
| | Reporting period MM/DD/YYYY to MM/DD/YYYY or Final Report Dated MM/DD/YYYY | | | | |
| Line 1 | Beginning Balance (A/O MM/DD/YYYY | | | | |
| | **Increases in Fund Balance** | | | | |
| Line 2 | Business Income | | | | |
| Line 3 | Cash and Securities | | | | |
| Line 4 | Interest/Dividend Income | | | | |
| Line 5 | Asset Liquidation | | | | |
| Line 6 | Third Party Litigation Income | | | | |
| Line 7 | Other Miscellaneous | | | | |
| | **Total Funds Available - Total Lines 1-7** | | | | |
| | **Decreases in Fund Balance** | | | | |
| Line 9 | Disbursements to Investors | | | | |
| Line 10 | Disbursements for Receivership Operations | | | | |
| 10a | Disbursements to Receiver/Other Professionals | | | | attorney fees; litigation expenses |
| 10b | Third Party Litigation Expenses | | | | |
| 10c | Asset expenses | | | | |
| 10d | Tax Payments | | | | |
| | Total Disbursements for Receivership Operations | | | | |
| Line 11 | Disbursements Related to Distribution Expenses | | | | specify fees, expenses, administrative, claims processing, etc. |
| Line 12 | Disbursements to Court/Other | | | | |
| Line 13 | Other | | | | specify |
| | **Total Funds Disbursed - Total Lines 9 - 13** | | | | |
| Line 14 | **Ending Balance (a/o MM/DD/YYYY)** | | | | |
| | Other Supplemental Information | | | | |

| Line 15 | Number of Claims | |
|---|---|---|
| 15a | No. of Claims Received This Reporting Period | |
| 15b | No. of Claims Received Since Inception of Estate | |
| Line 16 | Number of Claimants/Investors | |
| 16a | No. of Claimants/Investors Paid This Reporting Period | |
| 16b | No. of Claimants/Investors Paid Since Inception of Estate | |

Receiver:

By: _____

Signature

_____

Printed Name

_____

Title

Date: _____